THOMAS P. BEAL ET AL., EXECUTORS, ESTATE OF THOMAS P. BEAL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9969. Promulgated October 1, 1928.

*John F. Malley, Esq.*, and *John N. O'Donohue, Esq.*, for the petitioners.

*Bruce A. Low, Esq.*, for the respondent.

## OPINION.

LITTLETON: The petitioners contend that under the provisions of section 214 (a) (9) of the Revenue Act of 1921,[1] the Commissioner is

[1] Sec. 214. (a) That in computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(9) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the war against the German Government, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of such war, there shall be allowed, for any taxable year ending before March 3, 1924 (if claim therefor was made at the time of filing return for the taxable year 1918, 1919, 1920 or 1921) a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Act of Congress as a deduction in computing net income. At any time before March 3, 1924, the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and if he then finds as a result of an appraisal or from other evidence that the deduction originally allowed was incorrect, the income, war-profits, and excess-profits taxes for the year or years affected shall be redetermined; and the amount of tax due upon such redetermination, if any, shall be paid upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 252.

without authority to determine a deficiency for the year 1921 by disallowing a deduction for amortization claimed in and deducted on the return for that year, unless a reexamination of the return was made before March 3, 1924, and the deduction for amortization claimed and taken in the return was then found to be incorrect.

Briefly stated, the evidence shows that the decedent owned an undivided interest in certain amortizable facilities; that in his return for the years 1918, 1919, and 1920, he did not claim or take any deduction for amortization; that in his return for 1921 he claimed and took as a deduction for amortization of the amortizable facilities in which he owned an undivided interest, the amount of $6,683.44; and that in the year 1925 his books and returns for the years 1919, 1920, and 1921 were examined and as a result of that examination the deduction for amortization taken in his 1921 return was disallowed, thereby producing in part the deficiency herein.

Since the determination and appeal here in question were made and taken, respectively, within the four-year statutory period applicable to returns for 1921, our question is not whether this general statute of limitations has run, but rather, whether the above-quoted provision with respect to the reexamination of amortization claims prior to March 3, 1924, constitutes such a special statute of limitations that the deficiency here under consideration is barred, because the examination which gave rise to the deficiency was made subsequent to March 3, 1924. The petitioner contends that, since the return was accepted by the Commissioner when filed, there was at that time an examination and that a further examination was precluded after March 3, 1924. But can it be said that when a return is filed there is then an examination in the sense that the deductions claimed are even tentatively allowed? We think not. Officials of the Internal Revenue Bureau, charged with the duty of accepting returns filed by taxpayers, make little or no attempt to examine a return at the time of receipt in the sense that they determine whether given deductions claimed are proper. Obviously, when we consider the number of returns which were being submitted on March 15, 1922, when the return in question was filed, it would seem unreasonable to say that upon the filing of a return involving a claim for amortization, the acceptance of the return and an installment of the tax shown due constitute an examination and tentative allowance of the amortization claim. In effect, this was what we called in *James Couzens* v. *Commissioner*, 11 B. T. A. 1040, a " perfunctory act " on the part of the Commissioner and did not amount to an acceptance or allowance of this item or any other item stated or implied in the return.

In recognition of the fact that the examination is to be made after the return is filed, section 250 (b) of the Revenue Acts of 1918 and 1921, and section 271 of the Revenue Acts of 1924 and 1926, provide

that, as soon as practicable after the return is filed, the Commissioner shall examine it and determine the correct tax. To accomplish this purpose the Commissioner had under his supervision an audit and field force as distinguished from the collection force with whom the returns were filed. The force which examined returns included not only auditors, but also engineers to whom technical features similar to the claim here involved were referred. To follow the petitioner's theory would be to say that the original examination and allowance are made when the return is filed, and that the provision in question gave the Commissioner permission to make a further examination and the taxpayer the right to require such an examination. To this we can not accede.

While speculations as to all classes of cases which might come within the purview of the provision are unwarranted, a study of the manner in which an amortization allowance is computed shows why a reexamination of a claim which had previously been considered and disposed of, either by an allowance or rejection, might be desired either by the Government or the taxpayer. For example, in the case of amortizable facilities which had some value at the close of the war, and which were used in the taxpayer's peace-time business, the amortization allowance is determined upon the basis of a decline in value as reflected by the difference between the cost of the facility and its value to the taxpayer during the postwar period, costs during this period as compared with costs at acquisition, and other similar factors. The postwar period extends from the close of the war, March 3, 1921, to March 3, 1924. *Manville Jenckes Co.*, 4 B. T. A. 765; *F. Burkhart Manufacturing Co.*, 9 B. T. A. 1228. Obviously, if a taxpayer's claim came up for consideration and was disposed of during the early part of the postwar period, the decision reached might have been very different from what it would have been had the same claim been considered at a later time on the basis of additional facts as to postwar use or postwar costs. A greater or less use, or higher or lower costs, might be reflected, which in turn would affect the amortization allowance. Hence, the desirability of allowing the taxpayer the right to require such reconsideration. But Congress apparently realized that some limitation should be placed on the time within which taxpayers might require reexamination of claims once considered and, accordingly, fixed the date of March 3, 1924, which is likewise the end of the postwar period. As we said in *Manville Jenckes Co.*, *supra*, with respect to the end of the postwar period, " Doubtless Congress realized that for the purposes of proper administration of the amortization provisions of the statute a line would have to be drawn somewhere." By this limitation, taxpayers could not require the reopening of amortization claims once disposed of unless action to that end be taken prior to March 3, 1924.

We find nothing in the statute which in any way requires that the original examination of the amortization claim shall be made prior to March 3, 1924, or that a failure to make such examination prior to March 3, 1924, precludes the examination and disposition of such claim on its merits after March 3, 1924, when the general statutory period for the consideration of such returns had not yet run. To hold otherwise would mean, in cases where taxpayers had war contracts which extended their amortization period several years beyond 1918, that returns involving the allowance might not be reached for examination or well might not have been filed by March 3, 1924, and, therefore, no examination could be made of such returns other than such examination as is made when the return is filed and which we do not consider an examination as here contemplated. Surely, no such results were intended by Congress and we are of the opinion have not been accomplished.

A further consideration for rejecting the contention advanced by the petitioner is found in section 278 (b), Revenue Act of 1924 (and in effect the same provision in the 1921 and 1926 Acts) which provides that:

Any deficiency attributable to a change in a deduction tentatively allowed under paragraph (9) of subdivision (a) of section 214, or paragraph (8) of subdivision (a) of section 234, of the Revenue Act of 1918 or the Revenue Act of 1921, may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

It is difficult to conceive of how the determination, assessment and collection of tax shown due on account of a decrease in an amortization allowance could be accomplished " at any time " if the position advanced by the petitioner is sound. In fact, the examination which gave rise to the deficiency here in question was merely an examination by a revenue agent, such as is usual in the determination of an ordinary deficiency where amortization is not involved. An examination of the claim by an engineer was made more than a year later, after the appeal had been filed, and, therefore, was not the examination which gave rise to the deficiency, though the record does not disclose why this examination was made. The action, therefore, taken by the respondent in 1925, prior to this appeal, amounted to little, if any, more than might be required in any case for the determination of the tax shown by the rejection in whole or in part of an amortization claim.

The foregoing provision of the statute certainly evidences an intent on the part of Congress to extend, rather than limit, the general statutory period within which the Commissioner may determine, assess and collect tax shown due on account of a change in an amortization allowance previously taken or allowed. Whether this

provision, together with the permissive, rather than prohibitive, language used in section 214 (a) (9) with respect to reexaminations on the initiative of the Commissioner prior to March 3, 1924, would permit the Commissioner to reopen and reexamine claims after March 3, 1924, we deem it unnecessary to decide, since the record in this case indicates that the first action taken by the Commissioner after the return was filed gave rise to the deficiency and, therefore, a reexamination after March 3, 1924, is not properly involved. Nor is it necessary to pass on the question whether, by section 214 (a) (9), the Commissioner's authority as otherwise provided with respect to the reexamination of amortization claims affirmatively disposed of prior to March 3, 1924, was thereby increased or decreased. Suffice it to say that we find nothing in the statute which would bar the assessment and collection of the deficiency here in question merely because the original examination which gave rise to the determination was made subsequent to March 3, 1924. The Commissioner's action is accordingly sustained.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

ARUNDELL and MILLIKEN concur in the result.

LOVE, dissenting: I do not agree with the decision or opinion in this case. The claim for amortization was made in the return for 1921. The reexamination was not made or begun until subsequent to March 3, 1924. Section 214 (a) (9) of the Revenue Act of 1921 provides:

At any time before March 3, 1924, the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and if he finds as a result of an appraisal, or from other evidence that the deduction originally allowed was incorrect, the income, war-profits, and excess-profits taxes for the year or years affected shall be redetermined.

It occurs to me that the provision above quoted plainly implies that in the event no reexamination be made prior to March 3, 1924, the taxpayer is thereafter barred from making a request for such reexamination for the purpose of getting a larger deduction for amortization than claimed in his return, and that the Commissioner thereafter is barred from such reexamination, on his own initiative, for the purpose of, or resulting in, the decrease of the amount of such deduction claimed in the return. If such be not the proper construction of that statute, then I am unable to perceive any meaning in it.

But it is urged that section 250 (d) of the 1921 Act, and 278 (b) of later Acts, provide that such reexamination may be made by the Commissioner at any time. I do not construe those sections in that way. To give such a construction to them renders the part of section 214 quoted above absolutely meaningless and superfluous. It also nullifies the general limitation statutes.

One of the cardinal rules of statutory construction is that in the event two statutes appear to conflict, a construction will be given them, if such may be done without doing violence to the language employed, that will harmonize them both, and leave them both active.

To my mind the statutes in question may be construed harmoniously. Section 214 (a) (9) means just what it says—that at any time prior to March 3, 1924, the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and determine the correct amount of deduction allowable for amortization, whether more or less than the amount taken in the return. If no reexamination be made prior to March 3, 1924, the taxpayer may not thereafter demand such reexamination; neither may the Commissioner, on his own initiative, make such reexamination and change the amount shown in the return.

In the event such reexamination were made prior to March 3, 1924, any additional tax shown to be due as a result of such reexamination, "may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

Section 214 (a) (9) provides for, and prescribes a limitation on, the ascertainment or determination of the tax and the amount of same, while section 278 (b) provides for the collection of such tax as theretofore ascertained to be due.

Section 214 (a) (9) provides for the ascertainment of the correct amount of tax, with limitations on the time within which such may be done. Section 278 (b) provides for the collection of the tax. The two sections deal with separate and distinct functions.

When properly applied, each may be carried out and enforced.